## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

PALAXAR GROUP, LLC, and
PALAXAR HOLDINGS, LLC,

Plaintiffs,

v.

Case No: 6:14-cv-758-Orl-28GJK

SHANE WILLIAMS, JAY
STOLLENWERK, JODI DONALDSON
JAIMAN, HARRISON T. SLAUGHTER,
JR., MICHAEL C. MAHER, SCOTT M.
GOLDBERG, MATTHEW SCOTT
MOKWA, AARON CARTER BATES,
ALLEN MCLEAN ESTES, JOHN
RUSSELL CAMPBELL, ERIC
LANGLEY, LINDSAY REESE, SCOTT
SHUKER, ELIZABETH GREEN, ROY
KOBERT, TODD NORMAN,
NICOLETTE VILMOS, ROBERT
O'MALLEY, ROBERT W. CUTHILL, JR.,
BALCH & BINGHAM LLP, BROAD AND
CASSEL, P.A., LATHAM, SHUKER,
EDEN & BEAUDINE, LLP, MAHER LAW
FIRM, PA, NEXIA STRATEGY
CORPORATION, and AQMI STRATEGY
CORPORATION,

Defendants.

## ORDER

This diversity case was filed on September 18, 2013, in the Eastern District of

Virginia, Richmond Division, by Palaxar Group, LLC, and Palaxar Holdings, LLC

(collectively "Palaxar") against twenty-five Defendants. (Compl., Doc. 1). In May 2014, the

Virginia district court judge granted motions to transfer venue filed by several of the

Defendants under 28 U.S.C. § 1404(a), (see Docs. 149 & 150), and the case was

transferred to the Middle District of Florida, Orlando Division.[1] The case is now before the

Court on nine motions to dismiss filed by, or joined in by, twenty-three of the twenty-five

Defendants.[2] Having considered the parties' filings, the Court concludes that the motions

must be granted to the extent they are not rendered moot by rulings on other motions.

---

[1] After several reassignments within this division, the case was assigned to the undersigned for the second time on July 23, 2014. (See Docs. 234 & 236).

[2] The filings at issue are: (1) Motion to Dismiss Pursuant to Rule 12(b)(6) and Supporting Memorandum filed by Defendants Broad and Cassel, Todd Norman, Roy Kobert, and Nicolette Vilmos (Docs. 27 & 28), Palaxar's Memorandum in Opposition (Doc. 71), and Movants' Reply (Doc. 83); (2) Motion to Dismiss and Supporting Memorandum filed by Defendant Robert W. Cuthill, Jr. (Docs. 38 & 39), Palaxar's Memorandum in Opposition (Doc. 76), and Movant's Reply (Doc. 90); (3) Motion to Dismiss and Supporting Memorandum filed by Defendants Matthew S. Mokwa, Aaron C. Bates, Michael C. Maher, and The Maher Law Firm, P.A. (Docs. 41 & 42), Palaxar's Memorandum in Opposition (Doc. 78), and Movants' Reply (Doc. 95); (4) Motion to Dismiss filed by Defendant Scott M. Goldberg (Doc. 49), Palaxar's Memorandum in Opposition (Doc. 75), and Movant's Reply (Doc. 97); (5) Motion to Dismiss and Supporting Memorandum filed by Defendant Harrison T. Slaughter, Jr. (Docs. 50 & 51), Palaxar's Memorandum in Opposition (Doc. 77), and Movant's Reply (Doc. 92); (6) Motion to Dismiss and Supporting Memorandum filed by Defendants Latham, Shuker, Eden & Beaudine, LLP, Scott Shuker, and Elizabeth Green (Docs. 57 & 58), Palaxar's Memorandum in Opposition (Doc. 88), and Movants' Reply (Doc. 104); (7) Motion to Dismiss and Supporting Memorandum filed by Defendants Balch & Bingham, LLP, Allen McLean Estes, John Russell Campbell, and Lindsay Reese (Docs. 62 & 63), Palaxar's Memorandum in Opposition (Doc. 94), and Movants' Reply (Doc. 113); (8) Motion to Dismiss Pursuant to Rule 12(b)(1) and Supporting Memorandum filed by Defendants Broad and Cassel, Todd Norman, Roy Kobert, and Nicolette Vilmos (Docs. 64 & 65), Palaxar's Memorandum in Opposition (Doc. 93), and Movants' Reply (Doc. 103); and (9) Motion to Dismiss and Supporting Memorandum filed by Defendant Robert O'Malley (Docs. 68 & 69), Palaxar's Memorandum in Opposition (Doc. 89), and Movant's Reply (Doc. 115). The motions were argued before the Virginia district court prior to transfer of this case, and the transcript of that argument has been filed in the record (Doc. 239-1) and considered by this Court. In their filings and at oral argument, the Defendants largely joined in one another's arguments. Additionally, the Court previously granted the motion of pro se Defendants Shane Williams, Jodi Jaiman, and Jay Stollenwerk to adopt the arguments of the other Defendants in these motions. (See Mot., Doc. 226; Order, Doc. 237).

No motion has been filed by Defendant Nexia Strategy Corporation or by Defendant AQMI Strategy Corporation. Both of those corporations were forfeited to the United States in November 2009 in the criminal case against Frank Amodeo, Case No. 6:08-cr-176 in this Court. On February 4, 2014, the United States filed a Statement of Lack of Interest

## I.   Factual and Procedural Background

On October 12, 2007, Mirabilis Ventures, Inc. ("Mirabilis") and its wholly-owned

subsidiary, Nexia Strategy Corporation ("Nexia Strategy") filed a lawsuit ("the Mirabilis

Litigation"[3]) in a Florida state court against Edith Curry, Frank Hailstones, Palaxar, and

others, alleging claims including breach of contract, conversion, breach of fiduciary duty,

and misappropriation of trade secrets. The Mirabilis Litigation was removed to this Court

in November 2007 and was assigned to the undersigned district judge.[4] The defendants

in the Mirabilis Litigation filed Counterclaims and Third-Party Claims, and both sides

amended their pleadings several times to add parties and claims.

The crux of the Mirabilis Litigation was whether intellectual property ("the Palaxar

---

(Doc. 46) in this case, stating that it did not intend to represent Nexia Strategy or AQMI Strategy in this litigation and that it intended to file a motion in the criminal case to vacate the forfeiture order as to those two corporations. Two days later, the United States filed its motion to vacate in the criminal case, and that motion was granted on March 11, 2014. (Mot., Doc. 207, and Order, Doc. 208, in Case No. 6:08-cr-176). Thus, the Government no longer has any interest in those two corporations. On March 11, 2014, defaults were entered in this case against Nexia Strategy and AQMI Strategy. (See Docs. 138 & 139).

[3] The parties to the instant case have referred to the 2007 lawsuit in other ways in their filings, including, among others, "the Palaxar litigation," "the Middle District of Florida litigation," and "the Florida Lawsuit." Because the current case was filed by the Palaxar entities and is now in the Middle District of Florida, it would be confusing to refer to the prior case by any of these names. The Court finds "the Mirabilis Litigation" to be a less confusing alternative and accordingly will use that term to refer to the prior case.

[4] The Mirabilis Litigation was Case No. 6:07-cv-1788 in this Court. As noted in the text infra, the Court has taken judicial notice of the documents in that case, which are a matter of public record. References to documents from that case will be indicated by "Mirabilis Litigation Doc." followed by the document number. All other citations in this Order are to the record in Case No. 6:14-cv-758.

3

Processes"[5]) had been misappropriated from Nexia Strategy and taken to Palaxar—entities that had been formed by Curry, Hailstones, and others. The case proceeded for several years and was interrupted by an eighteen-month stay due to Mirabilis's filing of bankruptcy in mid-2008. In August 2010, this Court granted the summary judgment motion filed by Palaxar, Curry, and Hailstones as to all of the plaintiffs' claims against them. Mirabilis and Nexia Strategy filed a motion for reconsideration of that Order but then agreed in November 2010 to voluntarily dismiss their claims with prejudice[6]; the motion for reconsideration was denied as moot and the summary judgment order was vacated. (See Mirabilis Litigation Docs. 303, 339, & 350). The last of the counterclaims and third-party claims were dismissed on September 19, 2011.

In the current case, Palaxar brings four claims against twenty-five Defendants. Most of the Defendants are law firms and attorneys who were involved in, or allegedly involved in, the Mirabilis Litigation; these include: law firm Balch & Bingham, LLP, and its attorneys Allen Michael Estes, John Russell Campbell, Eric Langley, and Lindsay Reese (collectively "the Balch Defendants"); law firm Broad & Cassel, P.A., and its attorneys Roy Kobert, Todd Norman, and Nicolette Vilmos (collectively "the Broad Defendants"); law firm Lathan, Shuker, Eden & Beaudine LLP and its attorneys Scott Shuker and Elizabeth Green (collectively "the Latham Shuker Defendants"); The Maher Law Firm, P.A., and its attorneys Michael C. Maher, Matthew Scott Mokwa, and Aaron Carter Bates (collectively "the Maher

---

[5] In the Mirabilis Litigation, the intellectual property was referred to as "Nexia Certification." In the current case, Palaxar refers to it as the Palaxar Processes, and the Court will refer to it as such in this Order.

[6] Mirabilis and Nexia Strategy had previously requested dismissal of their claims without prejudice, but Palaxar and the other defendants objected to dismissal without prejudice. (See Mot., Mirabilis Litigation Doc. 280).

Defendants"); Harrison T. Slaughter, Jr.; and Scott M. Goldberg. Also named as Defendants are: Shane Williams, Jodi Jaiman, and Jay Stollenwerk, who were officers, directors, or employees of Mirabilis or Nexia Strategy; Robert O'Malley, a public relations professional who has done work on behalf of Mirabilis and Nexia Strategy; Robert W. Cuthill, Jr., who served as "liquidating president" of Mirabilis; and Nexia Strategy and AQMI Strategy Corporation, both of which are shell corporations that have previously been forfeited to the United States Government in the criminal proceeding of Frank Amodeo,[7] who formerly was affiliated with Mirabilis and Nexia Strategy.

In the Complaint, Palaxar contends that the filing of the Mirabilis Litigation was part of an improper plan to recover assets to be paid to the IRS in relation to Amodeo's criminal case and to generate substantial fees to be divided among the Defendants. Palaxar alleges claims of tortious interference with existing contract, contract expectancy, prospective business relationship, and economic advantage (Count I); malicious prosecution (Count II); common law conspiracy (Count III); and statutory business conspiracy under Virginia Code §§ 18.2-499 et seq. (Count IV).[8]

The moving Defendants seek to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted. Additionally, Cuthill and the Broad Defendants also seek dismissal of the claims against them under Rule 12(b)(1) for lack of subject-matter jurisdiction.[9] The 12(b)(1) motions will

---

[7] The undersigned also handled Amodeo's criminal case.

[8] All four claims are brought against all twenty-five Defendants except that O'Malley is not named in the malicious prosecution count. (See Compl. at 70).

[9]To the extent the Defendants' motions raised arguments other than those based on Rule 12(b)(1) or Rule 12(b)(6), the motions were ruled upon or denied as moot by the

be addressed first.

## II.  Rule 12(b)(1)—Subject-Matter Jurisdiction

Cuthill and the Broad Defendants argue that the case should be dismissed as to them because the Court lacks subject matter jurisdiction. This argument is based on the doctrine established in Barton v. Barbour, 104 U.S. 126 (1881), that "before suit is brought against a receiver leave of the court by which he was appointed must be obtained." Id. at 127. Unless this requirement is met, a court in which an action is brought against a receiver for conduct within the scope of his or her duties will lack subject matter jurisdiction. See id. at 131; see also Patco Energy Express, LLC v. Lambros, 353 F. App'x 379, 381 (11th Cir. 2009). Subject matter jurisdiction "involves the court's competency to consider a given type of case," and thus "cannot be waived or otherwise conferred upon the court by the parties." Bochese v. Town of Ponce Inlet, 405 F.3d 964, 975 (11th Cir. 2005). Because Palaxar does not allege that it obtained leave of the bankruptcy court before bringing suit against Cuthill and the Broad Defendants, this court lacks subject matter jurisdiction, and the motions to dismiss on that basis (Docs. 38 & 64) must be granted.

### A.  Legal Doctrine

Over time, the Barton doctrine has been expanded to protect bankruptcy trustees, trustees' attorneys, and other court-appointed officers representing the bankruptcy estate from lawsuits. See Carter v. Rodgers, 220 F.3d 1249, 1251-53 & n.4 (11th Cir. 2000) (holding that the doctrine applied to a former bankruptcy trustee and the auctioneer and antique company appointed by the trustee to conduct a sale of property); see also

district court in the Eastern District of Virginia prior to transfer of the case to this Court. (See Order, Doc. 150; Mem. Op., Doc. 149). Only the 12(b)(1) and 12(b)(6) issues remain for resolution.

McDaniel v. Blust, 668 F.3d 153, 156-57 (4th Cir. 2012). Formal appointment is not necessary; mere court approval of officers also extends protection. Carter, 220 F.3d at 1252 n.4; see also Lawrence v. Goldberg, 573 F.3d 1265, 1269 (11th Cir. 2009) ("We also held that the Barton doctrine applies to actions against officers approved by the bankruptcy court when those officers function as the equivalent of court appointed officers." (internal quotation marks omitted)). The doctrine has also been held to apply to debtors in possession and their attorneys. See In re W.B. Care Ctr., LLC, 497 B.R. 604, 610 (Bankr. S.D. Fla. 2013).

The scope of the Barton doctrine is indeed broad because it "serves the principle that a bankruptcy trustee 'is an officer of the court that appoints him,' and therefore that court 'has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties.'" McDaniel, 668 F.3d at 157 (quoting Lebovits v. Scheffel (In re Lehal Realty Assocs.), 101 F.3d 272, 276 (2d Cir. 1996)). The doctrine also serves to protect the integrity of the bankruptcy estate by requiring that "'all legal proceedings that affect the administration of the bankruptcy estate be either brought in the bankruptcy court or with the permission of the bankruptcy court.'" In re W.B. Care Ctr., 497 B.R. at 610 (quoting In re VistaCare Grp., LLC, 678 F.3d 218, 227-28 (3d Cir. 2012)).

### B.   Cuthill

In 2008, Mirabilis named Cuthill its Liquidating President. (Cuthill Aff., Doc. 39-1, ¶ 10). An early plan of liquidation, filed in the bankruptcy court on August 14, 2009, stated that Cuthill was the "initial Liquidating Agent," who would act as President and Director, and that the Barton doctrine would apply to Cuthill. (Doc. 39-3 at 30-33, 41-42). The plan was subsequently modified to provide that Cuthill was the President of Mirabilis, and the section invoking the Barton doctrine was explicitly deleted. (Doc. 76-2 at 12, 23). At a

hearing before the bankruptcy court, Mirabilis attorney Scott Shuker stated that because Cuthill was not a trustee, the Barton doctrine did not apply to him. (Doc. 76-1 at 9).

In an order confirming the Mirabilis bankruptcy liquidation plan, the bankruptcy court held that Cuthill's position as "the initial President and the initial Director of the Liquidating Debtor . . . is consistent with the interests of creditors and with public policy" and thus that the plan satisfied the requirements of the Bankruptcy Code. (Doc. 39-2 at 9). Furthermore, the bankruptcy court ruled that "[t]he Plan is in all respects confirmed pursuant to § 1129 of the Bankruptcy Code and all of its terms and provisions are approved. The Debtors and Liquidating Debtor are authorized and directed to take any and all actions contemplated to be taken by it under the Plan." (Id. at 11). The bankruptcy court appointed the President—Cuthill—as "the representative of the Estate . . . for the purpose of retaining and enforcing the Causes of Action." (Id. at 14).

Palaxar argues that the Barton doctrine does not extend to Cuthill for two reasons—first, Cuthill was not officially appointed trustee or receiver of the bankruptcy estate, and second, Cuthill is now judicially estopped from raising the doctrine, ostensibly because Mirabilis's attorney opined to the bankruptcy judge that the doctrine did not extend to Cuthill. (Doc. 76 at 19-20). Neither argument is well-founded. As explained above, the application of protection under the doctrine extends beyond those officially designated as trustees and includes those who were appointed or approved as representatives of the bankruptcy court. Here, Cuthill was approved and appointed the representative of the Mirabilis bankruptcy estate and accountable to the bankruptcy court. The suggestion made to the bankruptcy judge that the doctrine did not apply was made by the attorney for Mirabilis. Palaxar does not allege or argue that Shuker represented Cuthill individually,

8

(see Doc. 76; see also Exs. 3 & 7 to Compl. (indicating that Shuker and his firm represented Mirabilis)), and the record is devoid of any evidence of such. Furthermore, Palaxar does not indicate any previous positions taken by Cuthill personally that conflict with his current assertion of the Barton doctrine. Certainly, Cuthill cannot be bound by statements made by an attorney who did not represent him.[10]

## C. The Broad Defendants

The Broad Defendants argue that they are also entitled to dismissal of the case against them based on the Barton doctrine because they represented Mirabilis. Broad and Cassel appeared as post-confirmation litigation counsel for the liquidating debtor, Mirabilis, on October 30, 2009 in the bankruptcy court; this notice was signed by Kobert. (Doc. 65-1). In the Mirabilis Litigation, Vilmos, Kobert, and Norman represented Mirabilis beginning in 2009. In addition, Broad and Cassel appeared for Nexia Strategy through Vilmos and Norman. (Notice of Appearance, Doc. 24-10).

The bankruptcy court's order confirming the Joint Amended Plan of Liquidation as Modified stated that Mirabilis, the liquidating debtor, was "designated as the representative of the Bankruptcy Estates for the retention and enforcement of any Claim or Interest belonging to the Debtors or the Bankruptcy Estates." (Doc. 39-2 at 8; see also Doc. 76-2 at 2 (defining Mirabilis to be the liquidating debtor)). Thus, just as a debtor-in-possession

---

[10] Palaxar makes two additional arguments that must be rejected. Palaxar argues that Cuthill may not assert the Barton doctrine with regard to causes of action arising from Nexia Strategy. (Doc. 76 at 20). However, Palaxar does not point to which causes of action would arise solely from Nexia Strategy in either its response or in the Complaint. Additionally, Palaxar does not argue that any claims arising from Nexia Strategy would not be related to the Mirabilis bankruptcy under the broad scope of the Barton doctrine.

In addition, Palaxar's argument that Cuthill may not approbate and reprobate the Barton doctrine, (id. at 19-20), must be rejected because Palaxar does not assert a factual basis for making this argument.

has been found to be covered by Barton because the debtor "may affect the administration of the estate," In re W.B. Care Ctr., 497 B.R. at 610, Mirabilis is a representative of the bankruptcy estate that is covered by the Barton doctrine. By extension, the Barton doctrine also applies to the Broad Defendants, attorneys for Mirabilis. See id.; Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1241 (6th Cir. 1993).

Palaxar also argues in a footnote that the doctrine of issue preclusion, which prevents parties "from relitigating issues actually decided in a prior action," Gjellum v. City of Birmingham, 829 F.2d 1056, 1059 (11th Cir. 1987), forecloses the Barton doctrine argument. (Doc. 93 at 6 n.5). This argument must be rejected because in adopting the modified plan, the bankruptcy court did not rule on the applicability of the Barton doctrine. Although the modified plan stated that the section discussing the doctrine was deleted, (Doc. 76-2 at 23), Palaxar does not allege that the bankruptcy court actually ruled on the merits of the doctrine, (see Doc. 93). Thus, issue preclusion does not foreclose application of the Barton doctrine. Palaxar also argues that the appointment of Cuthill was unlawful, (Doc. 93 at 6-7), but the bankruptcy court and another judge in this Court—reviewing the bankruptcy court's decision on appeal—have previously ruled to the contrary. See Rachlin Cohen & Holtz, LLP v. Mirabilis Ventures, Inc. (In re Mirabilis Ventures, Inc.), Nos. 6:08-bk-04237-KSJ, 6:09-cv-1658-Orl-31, 6:09-cv-1659, 6:09-cv-1660, 2010 WL 1644915, at *3-4 (M.D. Fla. Apr. 21, 2010).

Palaxar raises, to no avail, some of the same arguments made in response to Cuthill's motion to dismiss. In particular, Palaxar's arguments that Shuker's statements estop the Broad Defendants from relying on the Barton doctrine must be rejected. Shuker is not alleged to have represented the Broad Defendants when he advised the bankruptcy

judge that the Barton doctrine did not apply to Cuthill. Furthermore, subject matter jurisdiction is not waivable.

### D. Conclusion as to Barton Doctrine

The Barton doctrine applies to the claims alleged against Cuthill and the Broad Defendants. Because Palaxar did not receive permission from the bankruptcy court to sue Cuthill and the Broad Defendants, the Court does not have subject matter jurisdiction over these claims against these Defendants, and the motions to dismiss on this basis (Docs. 38 & 64) must be granted.

## III. Rule 12(b)(6)—Failure to State a Claim for Which Relief Can Be Granted

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). The Court may take judicial notice of matters of public record. Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1280 (11th Cir. 1999); accord Carlucci v. Han, 907 F. Supp. 2d 709, 721 (E.D. Va. 2012). This includes documents in prior court cases, which are "public records that [a]re 'not subject to

11

reasonable dispute' because they [a]re 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'" Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (quoting Fed. R. Evid. 201(b)). In ruling on the 12(b)(6) motions, this Court has taken judicial notice of, and considered, the filings in the Mirabilis Litigation.

In their 12(b)(6) motions, the moving Defendants raise several arguments for dismissal, including that Palaxar's claims are time-barred; that they are barred by litigation immunity; that they are barred by res judicata and collateral estoppel; and that they are otherwise insufficiently pleaded. Before turning to these issues, the Court first considers the question of what state's law applies to the issues at hand.

## A. Choice of Law

As noted earlier, this case was transferred to the Middle District of Florida from the Eastern District of Virginia after the Virginia district court granted the motions of several Defendants to change venue pursuant to 28 U.S.C. § 1404(a). (See Order, Doc. 150; Mem. Op., Doc. 149). "A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." Atl. Marine Constr. Co. v. U.S. Dist. Court W. Dist. Tex., 134 S. Ct. 568, 582 (2013) (citing Klaxon Co. v. Stentor Elec. Mfg., 313 U.S. 487, 494-96 (1941)). However, when a case is transferred from one district to another under § 1404(a), "the transferee district court [is] obligated to apply the state law[11] that would have

---

[11] However, the transferee court applies the federal law of its own circuit rather than that of the circuit in which the transferor court is located. See Murphy v. FDIC, 208 F.3d 959, 964-66 (11th Cir. 2000); accord McMasters v. United States, 260 F.3d 814, 819 (7th Cir. 2001) ("[T]he transferee court is usually 'free to decide [federal issues] in the manner it views as correct without deferring to the interpretation of the transferor circuit.'" (alteration in original) (quoting In re Korean Air Lines Disaster, 829 F.2d 1171, 1174 (D.C. Cir. 1987))).

been applied if there had been no change of venue." Van Dusen v. Barrack, 376 U.S. 612, 639 (1964).[12] "Thus, th[is] district court in Florida must apply the same law that the [Virginia] court would have had the venue not been changed." McVicar v. Standard Insulations, Inc., 824 F.2d 920, 921 (11th Cir. 1987); accord Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 135 F.3d 750, 752 (11th Cir. 1998) ("[W]hen a case is transferred from one forum to another [under § 1404(a)], the transferor court's choice-of-law rules apply to the transferred case even after the transfer occurs.").

In determining choice of law in tort actions, Virginia "adhere[s] to the lex loci delicti, or place of the wrong, standard." Jones v. R.S. Jones & Assocs., Inc., 431 S.E.2d 33, 34 (Va. 1993).[13] Under this rule, "'the lex loci will govern as to all matters going to the basis of the right of action itself, while the lex fori controls all that is connected with the remedy.'" Id. (quoting Maryland v. Coard, 9 S.E.2d 454, 458 (Va. 1940)). Stated differently, in Virginia the substantive law of the place of the wrong applies, but the procedural law of Virginia applies. Id. The parties agree on these principles but disagree as to what state's substantive law applies to Palaxar's claims.

In Milton v. IIT Research Inst., 138 F.3d 519, 522 (4th Cir. 1998), the Fourth Circuit explained: "'The word "tort" has a settled meaning in Virginia. A tort is any civil wrong or

[12] In Van Dusen, the Supreme Court proclaimed the rule for when the venue transfer occurs on motion of the defendants. In 1990, the Court clarified that the same rule applies where the § 1404(a) transfer is initiated by the plaintiffs. See Ferens v. John Deere Co., 494 U.S. 516 (1990).

[13] The Jones court noted that in McMillan v. McMillan, 253 S.E.2d 662 (1979), the Supreme Court of Virginia "declined an invitation to adopt the so-called 'most significant relationship' test[] recommended by Restatement (Second) of Conflicts of Laws." Jones, 431 S.E.2d at 34. Florida adopted the "most significant relationship" test in 1980. See Bishop v. Fla. Specialty Paint Co., 389 So. 2d 999 (Fla. 1980).

13

injury; a wrongful act.'" (quoting Buchanan v. Doe, 431 S.E.2d 289, 291 (Va. 1993)). "Thus Virginia's choice of law rule selects the law of the state in which the wrongful act took place, wherever the effects of that act are felt. . . . Virginia clearly selects the law of the place where the wrongful act occurred, even when that place differs from the place where the effects of the injury are felt." Id.; accord Moore v. Cent. Carolina Surgical Eye Assocs., P.A., No. 4:12-cv-00015, 2013 WL 1123850, at *4 n.5 (W.D. Va. Mar. 15, 2013) (noting that "Virginia applies the doctrine of lex loci del[i]cti and selects the law of the site of the tortious activity").

In this case, the alleged wrongful acts at issue with regard to all of Palaxar's claims took place in Florida, and therefore all of Palaxar's claims are governed by the substantive law of Florida. Each of Palaxar's claims is based on the Mirabilis Litigation, which occurred in Florida. Defendants are not alleged to have committed any act in Virginia, and the fact that Palaxar allegedly lost business opportunities in Virginia cannot, under the circumstances of this case, alone support application of Virginia substantive law here. As explained in Milton, Virginia focuses on the place of the wrongful act rather than where its effects might be felt. See Milton, 138 F.3d at 522 (equating "the place where the tortious conduct . . . occurred" with the place where the "legal injury" occurred regardless of where impact of injury was felt); see also Fox v. C.I.T. Fin. Servs. Corp., 703 F. Supp. 496, 498 (W.D. Va. 1989) (noting that "[u]nder Virginia law, whether a tort occurred is determined by the law of the place where assertedly tortious events took place" and finding that Tennessee law of malicious prosecution governed because suit underlying the malicious

prosecution claim had been brought in Tennessee).[14] Accordingly, Florida substantive law applies to all of Palaxar's claims.[15]

## B. Statutes of Limitations

Defendants argue that Palaxar's claims are barred by the statutes of limitations applicable to them. "A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate 'if it is apparent from the face of the complaint that the claim is time-barred.'" Gonsalvez v. Celebrity Cruises Inc., 750 F.3d 1195, 1197 (11th Cir. 2013) (quoting La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004)); accord Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005) ("The raising of the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6)[] if the time bar is apparent on the

---

[14] Palaxar cites, and the Court's research has indicated, some cases that appear to be at odds with Milton. And, in a footnote in the Order transferring this case from the Eastern District of Virginia, the Virginia district court suggested that it was "likely that Virginia law applies to the tortious interference and conspiracy claims, and Florida law applies to the malicious prosecution claim." (Doc. 149 at 9 n.7). However, that footnote relies in part on Gen. Assurance of Am., Inc., v. Overby-Seawell Co., 533 F. App'x 200 (4th Cir. 2013), which is an unpublished opinion that is not considered precedential in the Fourth Circuit. Milton has not been overturned, and this Court has followed its explanation of Virginia's application of lex loci delicti. Moreover, one of the cases relied upon by Palaxar—Diaz Vicente v. Obenauer, 736 F. Supp. 679, 690 (E.D. Va. 1990)—was discussed in Milton.

[15] The determination that Florida law applies disposes of Count IV, which is a Virginia statutory claim. See, e.g., Hilb Rogal & Hobbs Co. v. Risk Strategy Partners, Inc., Civil Action No. 3:C5cv355, 2006 WL 5908727, at *1 (E.D. Va. Feb. 10, 2006) (noting the parties' agreement that the Virginia statutory business conspiracy claim could not survive under Georgia law, which was determined to apply under Virginia's choice-of-law rules.). Accordingly, that count will be dismissed as against all Defendants and will not be discussed further in this Order. Moreover, for the reasons stated later in this Order, Palaxar's claims would fail even if the substantive law of Virginia applied to them.

face of the complaint."). Defendants argue that the applicable statutes of limitations bar each of Palaxar's claims and that such bar is apparent from the face of the Complaint.

Although the substantive law of Florida applies to Palaxar's claims because Florida is the place of the wrongs, Virginia deems questions concerning statutes of limitations procedural and controlled by the law of the forum. See Barry v. Donnelly, 781 F.2d 1040, 1042 n.3 (4th Cir. 1986); Al Shimari v. CACI Int'l, Inc., 933 F. Supp. 2d 793, 801 (E.D. Va. 2013) ("Virginia's choice of law rules require application of its own statute of limitations to claims involving torts occurring outside the Commonwealth."); RMS Tech., Inc. v. TDY Indus., No. 02-1299, 64 F. App'x 853, 857 (4th Cir. 2003) ("Statutes of limitations are considered matters of procedure in Virginia courts, unless they are so bound up with the substantive law of a claim that the limitations period is itself considered substantive."). In this case Virginia is regarded as the forum due to the § 1404(a) transfer, and thus the statutes of limitations of Virginia apply. See McVicar v. Standard Insulations, Inc., 824 F.2d 920, 921 (11th Cir. 1987) ("[T]he district court in Florida must apply the same law that the Mississippi court would have had the venue not been changed. . . . Mississippi . . . applies its own law in procedural matters, including statutes of limitations.").

        *1.    Tortious Interference and Conspiracy Claims (Counts I, III, and IV)*

### a.   **Limitations Periods**

In Virginia, the statute of limitations for conspiracy is five years. See, e.g., Detrick v. Panalpina, Inc., 108 F.3d 529, 543 (4th Cir. 1997). And, despite a previous lack of clarity on the issue, earlier this year the Supreme Court of Virginia—answering questions certified to it by the U.S. Court of Appeals for the Fourth Circuit—held that the statute of limitations for tortious interference with contract and tortious interference with business expectancy is

also five years. Dunlap v. Cottman Transmission Sys., LLC, 754 S.E.2d 313, 321 (Va. 2014) (applying Va. Code § 8.01-243(B)).[16]

### b. Accrual

In Virginia, "[i]n every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property . . . ." Va. Code § 8.01-230; see also Arora v. Sahai, No. 2004 WL 2606912, at * (W.D. Va. Nov. 24, 2004) (citing Va. Code § 8.01-230) ("A tortious interference claim accrues on the date that the injury is sustained."); Detrick v. Panalpina, Inc., 108 F.3d 529, 543 (4th Cir. 1997) ("A cause of action under the conspiracy statute accrues at the time the [plaintiffs] first suffered any damages resulting from the acts committed in furtherance of the conspiracy.").

Palaxar alleges in the Complaint that "[s]ignificantly, immediately upon the . . . filing of" the Mirabilis Litigation, it was foreclosed from continuing to market the Palaxar Processes to the United States Government, the Commonwealth of Virginia, and financial institutions. (Compl. ¶ 77). Palaxar further alleges that as a result of the filing of the Mirabilis Litigation, the Commonwealth of Virginia and the United States stopped negotiating with Palaxar, "which injured and damaged Palaxar." (Id. ¶¶ 78-81). Additionally, Palaxar alleges that as a result of the Mirabilis Litigation being filed, "virtually overnight [it] lost the ability to participate in the United States' security clearance process reform," resulting in injuries to Palaxar. (Id. ¶ 82). Thus, Palaxar alleges that it was

---

[16]In Florida, the statute of limitations is four years for both conspiracy and tortious interference. § 95.11(3)(o) & (p); see also Yusuf Mohamad Excavation, Inc. v. Ringhaver Equip. Co., 793 So. 2d 1127, 1128 (Fla. 5th DCA 2001) (tortious interference); Olson v. Johnson, 961 So. 2d 356, 359 (Fla. 2d DCA 2007) (conspiracy).

—

damaged as of the time the Mirabilis Litigation was filed in October 2007. In order for the claims of tortious interference and conspiracy to be timely, Palaxar must have filed them no later than October 2012. Palaxar, however, did not file this case until September 2013— more than five years after these claims accrued.

Palaxar acknowledges that the last necessary event for accrual is injury, (see, e.g., Doc. 88 at 10), but despite this acknowledgment and the assertions of immediate injury in the Complaint Palaxar argues that it was not injured until the Court in the Mirabilis Litigation entered its "order of final judgment" and "removed the cloud on Palaxar's patents pending," (see, e.g., Doc. 88 at 13, 22). However, Palaxar's contention that its "injury was inchoate until such time as its rights to its intellectual property were free of any cloud or other competing claims," (Doc. 88 at 22, Doc. 94 at 18), is not well-taken. According to the express language of the Complaint and Palaxar's theory of the case, Palaxar suffered injury when the Mirabilis Litigation was filed. Conclusion of the Mirabilis Litigation was not the time of accrual of these claims. "In Virginia, only the slightest injury is required to start the running of the limitations period. . . . It is of no consequence that the amount of damages was not ascertainable until a later date." Int'l Surplus Lines Ins. Co. v. Marsh & McLennan, Inc., 838 F.2d 124, 129 (4th Cir. 1988); accord Stone v. Ethan Allen, Inc., 350 S.E.2d 629, 632 (Va. 1986) ("[W]here an injury, though slight, is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy therefor[,] the statute of limitations attaches at once. It is not material that all the damages resulting from the act should have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date."

(alteration in original) (emphasis removed)). Thus, Palaxar's claims of tortious interference and conspiracy are time-barred and shall be dismissed.

### 2. Malicious Prosecution

In Virginia, the statute of limitations for malicious prosecution is two years, and the claim accrues "when the relevant criminal or civil action is terminated," Va. Code § 8.01-249(3). Defendants argue that Palaxar did not file this case within two years of termination of the "relevant civil action," and this Court agrees.

During the Mirabilis Litigation, this Court held a telephonic hearing on November 15, 2010, during which Mirabilis and Nexia Strategy moved to dismiss their claims against Palaxar and the other defendants with prejudice. (See Mins., Mirabilis Litigation Doc. 336). Palaxar and the other defendants agreed to that dismissal with prejudice so long as they could still pursue attorney's fees.[17] (See Hr'g Tr., Mirabilis Litigation Doc. 341, at 11-12). The Court granted the motion during the hearing, and on November 17, 2010, the Court entered a written Order confirming the oral order made at the hearing and dismissing with prejudice Mirabilis and Nexia Strategy's claims against Palaxar and the other defendants. (Order, Mirabilis Litigation Doc. 339). Thereafter, litigation continued on counterclaims and third-party claims for nearly a year, and the remaining claims in the case were disposed of on September 19, 2011; judgment was entered on September 20, 2011. (Order, Mirabilis Litigation Doc. 456, and Judgment, Mirabilis Litigation Doc. 457).

Again, this second lawsuit was filed on September 18, 2013. Defendants contend that the statute of limitations on Palaxar's malicious prosecution claim began to run in

---

[17] The hearing was set for argument on Mirabilis and Nexia Strategy's then-pending motion for reconsideration of the Court's summary judgment order. Their voluntary dismissal of their claims rendered moot the motion for reconsideration and resulted in vacatur of the summary judgment order.

November 2010, when all claims against it were dismissed with prejudice. Palaxar, on the other hand, relying largely on Federal Rule of Civil Procedure 54(b), maintains that the statute did not begin to run until September 19, 2011, when the Court dismissed all claims in the entire case,. The Court agrees with Defendants.

During oral argument in Virginia, Defendants cited Young v. Ovella, No. 1:12CV390 LG-JMR, 2013 WL 1800589 (S.D. Miss. Apr. 29, 2013), which is factually similar. Although that case is unpublished, nonbinding, and applies Mississippi law instead of Virginia law, the Court finds it persuasive. There, the court found that the date that the final judgment was entered was "immaterial" and that the statute of limitations on the malicious prosecution claim began to run when the claims against the malicious prosecution plaintiff were dismissed in the prior suit after there was no response to his motion for summary judgment.

The result is the same here. With Palaxar's agreement and consent, Mirabilis and Nexia Strategy voluntarily dismissed their claims against Palaxar in November 2010, and that constituted "termination of the relevant civil action" for the purpose of starting the statute of limitations for malicious prosecution. Rule 54(b) does not pertain to the running of statutes of limitations under state law; it creates clarity with regard to when the time for filing a notice of appeal begins.[18] The fact that proceedings continued on other claims for some time thereafter did not delay or affect the running of the statute of limitations for malicious prosecution. The dismissal of the plaintiffs' claims with prejudice in November 2010 ended the suit against Palaxar and started the limitations clock. Palaxar did not file

---

[18] And, in the Mirabilis Litigation, there was no reason for an appeal of the November 2010 Order, as the claims were dismissed with prejudice by agreement.

this suit within two years of that dismissal, and accordingly its claim for malicious prosecution is barred by Virginia's two-year statute of limitations.

## C.    Litigation Immunity

Defendants also argue that Palaxar's claims are barred by Florida's doctrine of litigation immunity or litigation privilege. As to at least the claims of conspiracy and tortious interference, the Court agrees.

Under Florida law, "absolute immunity [is] afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . , so long as the act has some relation to the proceeding." Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So. 2d 606, 608 (Fla. 1994). This absolute immunity applies "not only to the parties in a proceeding but [also] to judges, witnesses, and counsel as well." Id. The Levin court explained that "[j]ust as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct." Id.; accord DelMonico v. Traynor, 116 So. 3d 1205, 1214 (Fla. 2013) (noting that recognition of absolute privilege is "premised on two concerns: (1) that the initial trial would needlessly devolve into another trial; and (2) that the potential exposure to a subsequent lawsuit would have a chilling effect on litigants seeking to redress their injuries").

"The litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin." Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So. 2d 380, 384 (Fla. 2007);

see also Microsoft Corp. v. Big Boy Distrib. LLC, 589 F. Supp. 2d 1308, 1322 (S.D. Fla. 2008) (finding tortious interference claim barred by Florida's litigation privilege where it was based on the plaintiff's pursuit of "its legal remedies through this lawsuit and another lawsuit filed against . . . one of [the defendant's] customers/ suppliers, for related activities"); Boca Investors Grp., Inc. v. Potash, 835 So. 2d 273, 275 (Fla. 3d DCA 2002) ("Here, as in Levin, all of the acts alleged in support of the tortious interference claim bear a relationship to the proceedings instituted by defendants. . . . Accordingly, those acts must be afforded absolute immunity."); Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1302-04 (11th Cir. 2003) (finding that Florida's litigation immunity doctrine barred claim for fraud that was based on alleged conduct including untruthful testimony, improper or obstructive motions, trial misconduct, and taking "false litigation positions").

Palaxar alleges that the Mirabilis Litigation is what caused its damages. All of Palaxar's claims arise from the Mirabilis Litigation or actions allegedly taken with some relation to the Mirabilis Litigation. The tortious interference and conspiracy claims are clearly barred by Florida's litigation privilege doctrine.

Turning to the malicious prosecution claim, in Wolfe v. Foreman, 128 So. 3d 67 (Fla. 3d DCA 2013), Florida's Third District Court of Appeal applied the litigation privilege to bar a claim for malicious prosecution, noting that "the acts complained of were the actual filing of the complaint and the brief prosecution of the case." 128 So. 3d at 71. The Wolfe court stated that it was "unpersuaded by the argument that . . . the application of the litigation privilege to the tort of malicious prosecution would effectively eliminate malicious prosecution as a cause of action al[together]." Id. at 70-71. At oral argument, both Palaxar

and Defendants expressed doubt as to whether the malicious prosecution claim is viable

at all under Florida law in light of Wolfe. (See Doc. 239-1 at 22, 40, & 45).

In Evanston Ins. Co. v. Design Build Interamerican, Inc., 569 F. App'x 739, 742 n.5

(11th Cir. 2014), the Eleventh Circuit explained:

> "In diversity cases, 'the rule is that, absent a decision from the state supreme court on an issue of state law, we are bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently.'" McMahan v. Toto, 311 F.3d 1077, 1080 (11th Cir. 2002). Moreover, the Florida Supreme Court has held that '[t]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by this Court. Thus, in the absence of interdistrict conflict, district court decisions bind all Florida trial courts.' Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 775 (11th Cir. 2000).

See also Studstill v. Borg Warner Leasing, 806 F.2d 1005, 1007 (11th Cir. 1986) ("A district

court must adhere to an intermediate state court decision even if the federal court does not

agree with the state court's reasoning or the outcome which the decision dictates."

(alteration in original)). To the extent Wolfe bars malicious prosecution claims in Florida

where the claims are based on acts occurring during judicial proceedings—as are the

claims in this case—this Court is constrained to follow that holding. In any event, the Court

has already disposed of the malicious prosecution claims on statute-of-limitations grounds.

### D.    Res Judicata and Collateral Estoppel

Defendants also argue that some or all of Palaxar's claims are barred by res judicata

(claim preclusion) and collateral estoppel (issue preclusion) because of rulings made and

orders entered in the Mirabilis Litigation. Because the Mirabilis Litigation took place in this

Court in the Middle District of Florida, the issues of res judicata and collateral estoppel are

governed by Florida law.[19] See Semtek v. Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001) (holding that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity" and "adopting, as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits"); accord Q Int'l Courier, Inc. v. Smoak, 441 F.3d 214, 218 (4th Cir. 2006) ("The 'law that would be applied by state courts in the State in which the [first] federal diversity court sits' determines the claim-preclusive effect of the judgment rendered in the first action." (alteration in original) (quoting Semtek, 531 U.S. at 508)).

"The doctrine of res judicata prevents the relitigation of causes of action previously determined." Jasser v. Saadeh, 103 So. 3d 982, 984 (Fla. 4th DCA 2012). Under this doctrine, "'a judgment on the merits will . . . bar 'a subsequent action between the same parties on the same cause of action.'" Id. (emphasis removed) (quoting Fla. Dep't of Transp. v. Juliano, 801 So. 2d 101, 105 (Fla. 2001)). "Importantly, the doctrine of res judicata not only bars issues that were raised, but it also precludes consideration of issues that could have been raised but were not raised in the first case.'" Id. (emphasis removed) (quoting Juliano, 801 So. 2d at 105).

"Four identities are required for res judicata to be applicable to a case: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the actions; and (4) identity of the quality or capacity of the persons for or against whom the claim is made." Tyson v. Viacom, Inc., 890 So. 2d 1205, 1209 (4th DCA 2005)

---

[19]The Eleventh Circuit has noted that Florida law and federal law regarding collateral estoppel are the same in any event. See Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of N. Am., Inc., 32 F.3d 528, 532 (11th Cir 1994) ("The federal standard for applying collateral estoppel principles agrees with the legal standard under Florida law."); accord Callasso v. Morton & Co., 324 F. Supp. 2d 1320, 1325 (S.D. Fla. 2004).

(internal quotations omitted). For res judicata purposes, the term "parties" is "much broader . . . than merely embracing parties to the record of an action" and includes those in privity with them. Jasser, 103 So. 2d at 985 (internal quotation and citation omitted).

"[C]ollateral estoppel, also known as issue preclusion, applies only where: (1) the identical issues were presented in a prior proceeding; (2) there was a full and fair opportunity to litigate the issues in the prior proceeding; (3) the issues in the prior litigation were a critical and necessary part of the prior determination; (4) the parties in the two proceedings were identical; and (5) the issues were actually litigated in the prior proceeding." Prof'l Roofing & Sales, Inc. v. Flemmings, 138 So. 3d 524, 527 (Fla. 3d DCA 2014). Where these elements are satisfied, "[c]ollateral estoppel may be applied to bar subsequent causes of action even where the second claim requires proof of different essential facts than those required to be proved in the initial suit." Larimore v. State, 76 So. 3d 1121, 1123 (Fla. 1st DCA 2012). "Collateral estoppel precludes re-litigating an issue where the same issue has been fully litigated by the parties or their privies, and a final decision has been rendered by a court." Mtge. Elec. Registration Sys., Inc. v. Badra, 991 So. 2d 1037, 1039 (Fla. 4th DCA 2008); accord Cook v. State, 921 So. 2d 631, 635 (Fla. 2d DCA 2005) ("A person who was not a named party to an action will nonetheless be subject to collateral estoppel arising from that action if that person was in privity with a party or virtually represented a party.").

In arguing that res judicata and collateral estoppel bar the claims in this case, Defendants rely on Counterclaims that were filed in the Mirabilis Litigation and on the Court's denials of a motion for sanctions and a motion for attorney's fees in that case. These are addressed in turn.

### 1.  Counterclaims in the Mirabilis Litigation

Defendants assert that Palaxar and those in privity with it filed counterclaims in the Mirabilis Litigation that asserted the same causes of action now raised in this case, and they argue that dismissal of those counterclaims with prejudice bars this suit.

Counterclaims were filed in February 2008 by Curry, Palaxar Holdings, and Hailstones, (Mirabilis Litigation Doc. 54), including a claim (Count 8) by Curry and Hailstones only against Mirabilis, Nexia, Bates, Mokwa, and others for intentional interference with advantageous business relationships and a claim (Count 9) by all three against Mirabilis, Nexia, Bates, Mokwa, and others for conspiracy to intentionally interfere with advantageous business relationships. Before an answer to those counterclaims was filed, Mirabilis and Nexia Strategy filed a Second Amended Complaint (Mirabilis Litigation Doc. 56), and Amended Counterclaims were then filed in March 2008 by Curry and Hailstones (Mirabilis Litigation Doc. 59). Although Palaxar Holdings was described in the introduction to the Amended Counterclaims as a "Counterclaim and Third Party Plaintiff," (Mirabilis Litigation Doc. 59 at 12), none of those amended counterclaims were brought by Palaxar Holdings but instead only by Curry, Hailstones, or both. (See id. at 15-35). In Counts 8 and 9 of the Amended Counterclaims, Curry and Hailstones again brought claims of intentional interference and conspiracy to intentionally interfere against Mirabilis, Nexia, Bates, Mokwa, and others. (See id. at 31-33).

In December 2010, Curry and Hailstones filed Second Amended Counterclaims (Mirabilis Litigation Doc. 346), again alleging claims (at that point renumbered as Counts 6 and 7 instead of 8 and 9) for intentional interference and conspiracy to intentionally interfere against Nexia, Bates, Mokwa, and others, (id. at 19-21). On May 16, 2011, Curry and Hailstones filed a Notice of Partial Settlement in Principle between them and Bates and

Mokwa, (Mirabilis Litigation Doc. 434), as well as a Notice of Settlement in Principle between them and Nexia Strategy, (Mirabilis Litigation Doc. 435). On September 15, 2011, Curry and Hailstones filed an Unopposed Motion to Dismiss their claims against Bates and Mokwa, including the claims for intentional interference and conspiracy to intentionally interfere. (Mirabilis Litigation Doc. 454). On September 19, 2011, the Court entered an Order granting that unopposed motion and dismissed those claims with prejudice. (Mirabilis Litigation Doc. 456). At that point, all claims, counterclaims, third-party claims, and third-party counterclaims had been resolved, and the Court's September 19 Order directed entry of judgment providing that all claims were dismissed with prejudice, including all counterclaims and third-party claims of Curry, Hailstones, and Palaxar Holdings. (See id.).

Defendants argue that the dismissal of the counterclaims of Palaxar Holdings as stated in the Court's September 19, 2011 Order bars relitigation of those claims in this case. However, Palaxar responds that Palaxar Holdings did not pursue any counterclaims in the Mirabilis Litigation because after its initial assertion of counterclaims (Mirabilis Litigation Doc. 54) it did not replead them in the Amended Counterclaim (Mirabilis Litigation Doc. 59) and instead only Curry and Hailstones pursued counterclaims. The Court agrees with Palaxar. The 2008 version of Federal Rule of Civil Procedure 15 provided that "[a] party may amend its pleading once as a matter of course . . . before being served with a responsive pleading." Fed. R. Civ. P. 15(a)(1)(A). Palaxar and the other Mirabilis Litigation Defendants amended their counterclaim in accordance with that provision, and Palaxar did not bring or pursue any counterclaims or third-party claims after that. Thus, there were no

27

claims of Palaxar Holdings in the Mirabilis Litigation after the filing of the Amended Counterclaim.

Nevertheless, this is a hollow victory for Palaxar because Palaxar is in privity with Curry and Hailstones, who did pursue counterclaims that ultimately were dismissed with prejudice. Palaxar is bound by the res judicata effect of those dismissals to the same extent as Curry and Hailstones would be.

All elements of res judicata are satisfied here. The counterclaims stated two of the same causes of action as stated in the Complaint in this case—tortious interference and conspiracy to tortiously interfere—against some of the same parties, based on the same factual background alleged in the Complaint in this case, and alleging interference with one of the same business relationships. The counterclaims against Nexia Strategy, Mokwa, and Bates were dismissed with prejudice by the Court, which constitutes an adjudication on the merits. Additionally, Bates and Mokwa are obviously the same parties as in the prior suit with regard to these claims. And, to the extent the other Defendants are not in privity with Bates and Mokwa based on agency principles, they are in privity with them because conspirators are deemed to be in privity for res judicata purposes. See Ananiev v. Freitas, Civ. Action No. 13-00341(BAH), 2014 WL 1400857, at *9 (D.D.C. Apr. 11, 2014) ("[R]es judicata may be invoked against a plaintiff who has previously asserted essentially the same claim against different defendants where there is a close or significant relationship between successive defendants. Members of a conspiracy are deemed under the law to be in privity with each other." (alteration in original) (internal citation and quotation omitted)); Busse v. Steele, No. 2:10-CV-89-FTM-36GTW, 2010 WL 3894558, at *2 (M.D. Fla. Aug. 18, 2010) ("Governor Crist is properly considered to be in privity with prior

defendants, since the plaintiffs have alleged a conspiracy."). Accordingly, res judicata bars relitigation of Palaxar's tortious interference and conspiracy claims.

> 2. Denial of Motions for Sanctions and Attorney's Fees in the Mirabilis Litigation

During the Mirabilis Litigation, one of the defendants, Terence Chu—a founding member of Palaxar—filed a Motion for Sanctions against Estes; Campbell; Balch & Bingham; Bates; Mokwa; the law firm of BatesMokwa, PLL; Vilmos; Norman; Kobert; and Broad & Cassel "for the frivolous and baseless amended complaint they filed on behalf of Mirabilis." (Mirabilis Litigation Doc. 242 at 1-2). The assigned magistrate judge issued a Report (Mirabilis Litigation Doc. 351) recommending the denial of Chu's motion, and over Chu's objection the Court adopted that Report and denied the motion, (Order, Mirabilis Litigation Doc. 375).

In his Report, the magistrate judge noted that "in order to be entitled to sanctions under Rule 11, [28 U.S.C. §] 1927, or the Court's inherent authority, a movant must show that an attorney pursued objectively untenable factual or legal positions, engaged in unreasonable and vexatious conduct that multiplied the proceedings, or acted in bad faith." (Mirabilis Litigation Doc. 351 at 20). The magistrate judge expressly rejected Chu's assertions that the attorneys had filed the Complaint for an improper purpose, acted in bad faith in filing the Complaint, or otherwise acted improperly. (Id. at 21-22).

Additionally, in January 2011, Palaxar, Curry, and Hailstones filed a Motion for Attorney's Fees (Mirabilis Litigation Doc. 372), seeking fees and costs against: Mirabilis, Nexia Strategy, Cuthill, Bates, Mokwa, the law firm of Goldberg Bates, PLLC, BatesMokwa, PLLC, Estes, Campbell, Balch & Bingham, Vilmos, Norman, and Broad & Cassel. The movants alleged that the Complaint and Amended Complaint were "frivolous and

baseless"; that the Mirabilis Litigation had been "willfully and vexatiously maintain[ed] . . . despite clear obligations to discontinue it"; and that the suit had been filed to retrieve funds for Amodeo. (Id. at 2-3).

The assigned magistrate judge issued a Report and Recommendation on that motion. (Mirabilis Litigation Doc. 445). In that Report, the magistrate judge noted that Palaxar's motion "fail[ed] to specifically identify the attorney or law firm involved, show[] the specific misconduct committed by the attorney or law firm, and provide support for the harm allegedly resulting from any specific misconduct so the Court can determine what an appropriate sanction would be." (Id. at 25). Additionally, the Report noted that the motion "level[ed] numerous conclusory allegations against the Respondents" but that "the evidence presented by the Defendants fails to prove that any of the Respondents knowingly or willfully committed misconduct." (Id. at 26). The magistrate judge accordingly recommended that Palaxar's motion for attorney's fees be denied. (Id. at 28). The Court adopted the Report and denied the motion. (Mirabilis Litigation Doc. 455).

Defendants argue that the denials of these motions and the rejection in those denials of assertions that the Mirabilis Litigation was baseless collaterally estop Palaxar from alleging malicious prosecution in this case. In opposing Defendants' collateral estoppel argument, Palaxar asserts that rulings on attorney's fees motions are only "corollary" to the main case and "not part of the underlying lawsuit." (See, e.g., Doc. 239-1 at 51). Palaxar relies on the Supreme Court's recent decision in Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Employers, 134 S. Ct. 773, 777 (2014), in which the Court held that "the pendency of a ruling on an award for fees and costs does not prevent, as a general rule, the merits judgment from becoming

final for purposes of appeal." Ray Haluch Gravel Co. is not helpful here, though, because it does not speak to the question of whether a ruling on an attorney's fees motion can collaterally estop a party from raising a decided issue in a later lawsuit.

The Court's research has uncovered a case on point where a state court ruled that a malicious prosecution claim was barred by collateral estoppel due to a previously-denied motion for attorney's fees in a federal trial court. In Williamson v. Guentzel, 584 N.W.2d 20, 22 (Minn. Ct. App. 1998), the appellant had requested fees in the first case under the Lanham Act, which allows for an award of attorney's fees in cases that are "groundless, unreasonable, vexatious, or . . . pursued in bad faith." (citation and quotation omitted). The federal court denied the motion, finding that the plaintiff's assertions "'could not be said to be groundless or unreasonable.'" Id. at 22 (quoting the federal court's order). When the defendant subsequently sued in state court for malicious prosecution, the trial court found that he was "collaterally estopped from relitigating the reasonableness of [the] earlier suit, an essential element of the tort of malicious prosecution," and the appellate court affirmed. Id.

This Court agrees with the reasoning of the Williamson court and concludes that the rejection in the Mirabilis Litigation of the assertions of Palaxar Holdings and those in privity with it that the lawsuit was frivolous bar Palaxar's malicious prosecution claim. One of the elements of malicious prosecution is that "there was an absence of probable cause for the original proceeding." Olson v. Johnson, 961 So. 2d 356, 359 (Fla. 2d DCA 2007) (citing Durkin v. Davis, 814 So.2d 1246, 1248 (Fla. 2d DCA 2002)). That issue was actually litigated in the Mirabilis Litigation after a full and fair opportunity to do so on multiple

31

occasions.[20] The parties are the same or in privity. The rulings in the Mirabilis Litigation that neither sanctions nor attorney's fees were warranted estop Palaxar from relitigating whether there was probable cause for the filing of the suit. Accordingly, the malicious prosecution claim is barred by collateral estoppel.

## E.    Other Arguments

The Defendants make other arguments in support of their 12(b)(6) motions, many of which relate to the sufficiency of the pleading as to each of them. They note that the Complaint is seventy-two pages long and largely discusses them collectively without alleging what each of them did. If this were the only deficiency in the Complaint, leave to amend would likely be required. In light of the other, dispositive rulings in this Order, the Court will not address these arguments.

## IV.    Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motion to Dismiss filed by Defendant Robert W. Cuthill, Jr. (Doc. 38) is **GRANTED** based on lack of subject matter jurisdiction under the Barton doctrine. The claims against Defendant Cuthill are **dismissed** for lack of subject matter jurisdiction. Because the Court lacks subject matter jurisdiction over the claims against Cuthill, the remainder of Cuthill's motion has been rendered **moot**.[21]

---

[20] Palaxar has not asserted that there was not a full and fair opportunity to litigate the issues in the Mirabilis Litigation.

[21] If the Court had found that it had subject matter jurisdiction over the claims against Cuthill, the 12(b)(6) arguments in Cuthill's motion would have been granted for the reasons stated in this Order in the discussion of the 12(b)(6) arguments of the other Defendants.

2. The Motion to Dismiss Pursuant to Rule 12(b)(1) filed by Defendants Broad and Cassel, Todd Norman, Roy Kobert, and Nicolette Vilmos (Doc. 64) is **GRANTED**. The claims against Defendants Broad and Cassel, Norman, Kobert, and Vilmos are **dismissed** for lack of subject matter jurisdiction. The Motion to Dismiss Pursuant to Rule 12(b)(6) filed by Defendants Broad and Cassel, Todd Norman, Roy Kobert, and Nicolette Vilmos (Doc. 27) has been rendered **moot**.[22]

3. The Motion to Dismiss filed by Defendants Matthew S. Mokwa, Aaron C. Bates, Michael C. Maher, and The Maher Law Firm, P.A. (Doc. 41) is **GRANTED**, and the claims against Defendants Mokwa, Bates, and The Maher Law Firm are **dismissed with prejudice** for the reasons stated herein.

4. The Motion to Dismiss filed by Defendant Scott M. Goldberg (Doc. 49) is **GRANTED**, and the claims against Defendant Goldberg are **dismissed with prejudice** for the reasons stated herein.

5. The Motion to Dismiss filed by Defendant Harrison T. Slaughter, Jr. (Doc. 50) is **GRANTED**, and the claims against Defendant Slaughter are **dismissed with prejudice** for the reasons stated herein.

6. The Motion to Dismiss filed by Defendants Latham, Shuker, Eden & Beaudine, LLP, Scott Shuker, and Elizabeth Green (Doc. 57) is **GRANTED**,

---

[22] If the Court had found that it had subject matter jurisdiction over the claims against the Broad Defendants, the Broad Defendants' 12(b)(6) motion would have been granted for the reasons stated in this Order in the discussion of the 12(b)(6) arguments of the other Defendants.

and the claims against these Defendants are **dismissed with prejudice** for the reasons stated herein.

7. The Motion to Dismiss filed by Defendants Balch & Bingham, LLP, Allen McLean Estes, John Russell Campbell, and Lindsay Reese (Doc. 62) is **GRANTED**, and the claims against these Defendants are **dismissed with prejudice** for the reasons stated herein.

8. The Motion to Dismiss filed by Defendant Robert O'Malley (Doc. 68) is **GRANTED**, and the claims against Defendant O'Malley are **dismissed with prejudice** for the reasons stated herein.

9. Based on their adoption (with permission of the Court) of the arguments of the moving Defendants, the claims against *pro se* Defendants Shane Williams, Jodi Jaiman, and Jay Stollenwerk are **dismissed with prejudice** for the reasons stated herein.

**DONE** and **ORDERED** in Orlando, Florida, on September 30, 2014.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties

34