## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

PALAXAR GROUP, LLC;
a Virginia Limited Liability Company;
PALAXAR HOLDINGS, LLC,                          Case No. 6:14-CV-6758-ORL-28GJK
a Virginia Limited Liability Company,

       Plaintiff,

v.

SHANE WILLIAMS, et al.,

       Defendants.
_____/

## BROAD DEFENDANTS' RESPONSE TO ORDER TO SHOW
## CAUSE CONCERNING SUBJECT MATTER JURISDICTION
### (Doc. 293, 294)

Defendants Broad and Cassel (hereinafter "Broad"), Todd Norman ("Norman"), Roy
Kobert ("Kobert"), and Nicolette Vilmos ("Vilmos") (collectively, "Broad Defendants"),
respond to the Court's Order to Show Cause Concerning Diversity Jurisdiction (Doc. 293, 294).

## I.     INTRODUCTION

Even if diversity jurisdiction is lacking, the Amended Order dismissing Plaintiffs'
Complaint for lack of subject matter jurisdiction under the *Barton* Doctrine should not be
vacated. Dismissals pursuant to the *Barton* Doctrine or for lack of diversity are both dismissals
for lack of subject matter jurisdiction, and therefore, provide independent bases for dismissal for
lack of subject matter jurisdiction. (Doc. 259 at pp. 11, 32-33); *Barton v. Barbour*, 104 U.S. 126,

26 L.Ed. 672 (1881).  Thus, any modification of the Amended Order should reflect that the Court had federal question jurisdiction under the federal bankruptcy laws: 1) to dismiss the Broad Defendants and Defendant William Cuthill, Jr. ("Cuthill"), under the *Barton* Doctrine and, 2) to hold that "[i]f the Court had found that it had subject matter jurisdiction over the claims against [Cuthill and the Broad Defendants], the 12(b)(6) arguments in Cuthill's [and the Broad Defendants'] motion[s] would have been granted for the reasons stated in this Order in the discussion of the 12(b)(6) arguments of the other Defendants." In addition, the Broad Defendants and Cuthill's Co-Defendants have authorized the undersigned to represent that they will separately be filing papers arguing that the Court had federal question jurisdiction under the federal bankruptcy laws to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

### A.  Procedural Background

The procedural background in this case is discussed in the Court's October 2, 2014 Amended Order (Doc. 259), which is incorporated herein.  In the Amended Order, the Court dismissed the case below as to twenty-three of the twenty-five Defendants.  The Court's well-reasoned decision correctly dismissed the case as to twenty-one Defendants for failure to state a claim upon which relief can be granted (Doc. 259 at pp. 33-34).

In its Amended Order, the Court correctly determined that it lacks subject matter jurisdiction as to the Broad Defendants and Cuthill when it dismissed the case against them under the *Barton* Doctrine (Doc. 259 at pp. 11, 32-33); *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881).   The Court also correctly stated, "[i]f the Court had found that it had subject matter jurisdiction over the claims against [Cuthill and the Broad Defendants], the 12(b)(6)

arguments in Cuthill's [and the Broad Defendants'] motion[s] would have been granted for the reasons stated in this Order in the discussion of the 12(b)(6) arguments of the other Defendants" (Doc. 259-260 at pp. 32-33, nn. 22-23).   In practical effect, the Court determined that had Plaintiffs sought permission to proceed as required by the *Barton* Doctrine, Plaintiffs' Complaint failed to state a claim upon which relief can be granted against the Broad Defendants and Cuthill.

Plaintiffs appealed (Doc. 266).  In Case No. 14-14969cc, the Eleventh Circuit issued an order directing the parties to brief the question of whether diversity jurisdiction existed (11th Cir. Doc. Case No. 14-14969cc).   In response, the Defendants/Appellees argued that federal question jurisdiction exists under federal bankruptcy laws (Doc. 295 1-4; 11th Cir. Doc. Case No. 14-14969cc, 11-25-14).   The Broad Defendants moved to dismiss the appeal in Case No. 14-14969cc for lack of appellate jurisdiction insofar as the Amended Order did not dismiss the case as to the two defaulted Defendants, but no judgment had yet been entered against those Defendants (11th Cir. Doc. Case No. 14-14969cc, 11-25-14).

The Eleventh Circuit did not reach the question of whether subject matter jurisdiction exists under diversity or federal question jurisdiction.   Instead, the panel granted the Broad Defendants' motion to dismiss the appeal for lack of appellate jurisdiction (Doc. 280).

Meanwhile, Frank Amodeo ("Amodeo"), who is not a party in this case, had filed an appeal in Case No. 14-14745C of Court's orders denying his motion to appoint a guardian ad litem (Doc. 263, 266).  Plaintiffs and Amodeo were the only parties in case no. 14-14745C. (11th Cir. Doc. Case No. 14-14969cc).   Defendants were not parties to Amodeo's appeal.

In Case No. 14-14745C, the Eleventh Circuit issued the same order it had entered in Case No. 14-14969cc directing the Plaintiffs and Amodeo to brief the question of whether diversity

jurisdiction existed (11th Cir. Doc. Case No. 14745C, 2-3-15).  As the docket in Case No. 14-14745C reflects, Plaintiffs and Amodeo apparently did not bring to the attention of the panel that a prior panel  had determined that appellate jurisdiction was lacking, or that the Defendants had contended in Case No. 14-14969cc that federal question jurisdiction existed (11th Cir. Doc. Case no. 14745C, 2-19-15; 3-26-15).   On September 2, 2015, a different panel of the Eleventh Circuit entered an order remanding Case No. 14-14745C for the Court to determine diversity jurisdiction and stated that the Court "should" dismiss the case for lack of subject matter jurisdiction if the Court determines diversity jurisdiction is lacking (Doc. 293).  The Eleventh Circuit's order in Case No. 14-14745C does not refer to the panel's order in Case No. 14-14969cc.  The Court then issued its Order to Show Cause to Plaintiffs and Defendants (Doc. 294, 296).

### B.  Summary of Argument

Plaintiffs have no incentive to amend to plead the jurisdiction of the Court.  Having lost on the issue of the *Barton* Doctrine and on the merits, Plaintiffs have every incentive to simply concede the lack of subject jurisdiction so they can obtain a "do over."

However, regardless of whether diversity exists, an order reaffirming dismissal under the *Barton* Doctrine would be consistent with the Eleventh Circuit's order remanding the case insofar as such a dismissal would simply recognize that there is an independent basis for dismissal for lack of subject matter jurisdiction.  As discussed below, the Court had federal question jurisdiction under the federal bankruptcy laws to decide the application of *Barton v. Barbour*, 104 U.S. 126 (1881) (Doc. 259 at pp. 5-12), and the inherent authority to decide its own jurisdiction.

In addition, since Plaintiffs filed state law claims in federal court asserting diversity

jurisdiction, the Court had no reason to address whether it had independent federal question jurisdiction.  Now, it does. As discussed below, by recognizing the applicability of the *Barton* Doctrine to this case, the Court has implicitly recognized its federal question jurisdiction under the bankruptcy laws. *See e.g., Heavrin v. Schilling (In re Triple S Restaurants, Inc.)*, 519 F.3d 575, 578 (6th Cir 2008*)* (state court action against trustee for actions in his official capacity was removed to federal court; the Sixth Circuit held that "the bankruptcy court properly exercised jurisdiction over this case [because] . . . [u]nder the *Barton* doctrine, 'leave of the [bankruptcy] forum must be obtained by any party wishing to institute an action in a [state] forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court'").  This jurisdiction arises because this proceeding is a "core" or "related" proceeding to the prior bankruptcy, *In re Mirabilis*, Case No. 6:08-bk-04327-KSJ, In the United States Bankruptcy Court for the Middle District of Florida ("MVI Bankruptcy").

It therefore follows that the Court had federal question jurisdiction to determine that, had Plaintiffs sought approval of the bankruptcy court and if the Court had jurisdiction, Plaintiffs' Complaint fails to state a claim upon which relief can be granted and would have been dismissed with prejudice.  Finally, Co-Defendants have authorized the undersigned to represent that they will argue that the Court has federal question jurisdiction to decide the merits of this case.

The practical effect of an order dismissing the case for lack of subject matter jurisdiction under the *Barton* Doctrine would be to vindicate the policies behind the *Barton* Doctrine, which required these Plaintiffs to seek permission from the bankruptcy court in this District to sue the Broad Defendants and Cuthill before filing a lawsuit in state court against them (Doc. 259); *Lawrence v. Goldberg,* 573 F.3d 1265, 1269 (11th Cir. 2009) ("the Barton doctrine applies to

actions against officers approved by the bankruptcy court when those officers function 'as the equivalent of court appointed officers'"); *McDaniel v. Blust*, 668 F.3d 153, 156-157 (4th Cir. 2012) (extends the *Barton* Doctrine to attorneys hired by trustees to bring adversary claims on behalf of the bankruptcy estate).  The *Barton* Doctrine applies even after a bankruptcy case is closed and the trustee no longer has possession of the debtor's assets.  *In re Crown Vantage, Inc.*, 421 F.3d, 963, 971 (9th Cir. 2005); *Muratore v. Darr*, 375 F.3d 140, 177 (1st Cir. 2004) ("the Barton doctrine applie[s] to a state court lawsuit filed eleven months after the bankruptcy case was closed").

The policies underpinning the *Barton* Doctrine are very strongly implicated in this case insofar as this Court has determined that it would have dismissed all claims against the Broad Defendants and Cuthill with prejudice if subject matter jurisdiction had existed, and insofar as Plaintiffs' Complaint challenges rulings of the bankruptcy court.  The *Barton* Doctrine recognizes that the appointing court has a "strong interest in protecting [the trustee] from unjustified personal liability for acts taken within the scope of his official duties."  *Lebovits v. Scheffel* (*In re Lehal Realty Assocs.*), 101 F.3d 272, 276-277 (2d Cir.1996).  "The requirement of uniform application of bankruptcy law dictates that all legal proceedings that affect the administration of the bankruptcy estate be brought either in bankruptcy court or with leave of the bankruptcy court."  *In re Crown Vantage, Inc.*, 421 F.3d, at 971.  For these reasons, the portion of the Amended Order dismissing the Broad Defendants and Cuthill for lack of subject matter jurisdiction under the *Barton* Doctrine should not be vacated.

This case is a "core" or "related" proceeding to the MVI Bankruptcy and, therefore, subject matter jurisdiction exists because (as the Amended Order, Doc. 259, held), this case was

filed by privies of parties who made the same claims in the "Mirabilis Litigation" (Doc. 259 at

pp. 3) against the same Defendants and their privies, as they made in the Mirabilis Litigation

(Doc. 259 at pp. 26-31).  In addition, this is a "related proceeding" to the MVI Bankruptcy and,

therefore, subject matter jurisdiction exists, because Plaintiffs in this case directly challenge

numerous rulings made in the MVI Bankruptcy and in the Mirabilis Litigation.

As discussed below and in the Amended Order, Plaintiffs sued the Broad Defendants in

this case and alleged tortious conduct by the Broad Defendants in connection with their

prosecution of the Mirabilis Litigation as post-confirmation counsel for the liquidating debtor.

The Broad Defendants represented the debtor in the Mirabilis Litigation for the benefit of the

creditors of the debtor in the MVI Bankruptcy.

An Article III United States District Court Judge for the Middle District of Florida need

not refer questions concerning the merits of a "core" or "related" proceeding to the bankruptcy

court in this District, because bankruptcy judges obtain their authority to rule on cases from

Article III District Court Judges in this District.

The Broad Defendants and Cuthill's Co-Defendants strongly believe that the Court had

federal question jurisdiction under the federal bankruptcy laws to decide the merits of this case

and to dismiss it with prejudice.  Thus, those Co-Defendants have told the undersigned that they

will separately address these arguments.

## II.   THIS COURT HAS SUBJECT MATTER JURISDICTION TO DECIDE THIS CASE UNDER THE FEDERAL QUESTION DOCTRINE BECAUSE THIS IS A "CORE" PROCEEDING UNDER THE FEDERAL BANKRUPTCY LAWS

This Court has federal question jurisdiction because this case is a "core" proceeding

under 28 U.S.C. § 157(b).  28 U.S.C. § 1334 confers upon a district court "original but not

exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." 28 U.S.C. § 1334(b) (emphasis added). "Core proceedings are defined in 28 U.S.C. § 157(b)(1) as 'proceedings arising under title 11, or arising in a case under Title 11, which is a subset of the cases over which jurisdiction is granted in § 1334(b).'" *Continental Nat'l Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1345 n.6 (Fla. 11th Cir. 1999).

"A core proceeding either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." *See In re Lunan*, 489 B.R. 711, 722 (Bankr. E.D. Tenn. 2012). In determining whether a particular proceeding is a "core" proceeding, the Court must consider "both the form and substance of the procedure in making its determination." *Id*. "Additionally, a determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." *Id*. "Determining whether a particular proceeding is core may involve an analysis of the nexus between the proceeding involving a state-law cause of action and the bankruptcy estate." *In re Heinsohn*, 247 B.R. 237, 243 (Bankr. E.D. Tenn. 2000). "To be a core proceeding, an action must have as its foundation, the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment, although of necessity there may be a peripheral state law involvement." *Id*.

Numerous federal courts have determined that state law claims which implicate the *Barton* Doctrine raise federal questions as 'core proceedings" under the bankruptcy laws, and those claims may be removed to federal court because of the federal bankruptcy policies implicated by claims against trustees, their counsel, or their functional equivalents. *See e.g., Heavrin,* 519 F.3d at 578; *Harris v. Wittman (In re Harris)*, 590 F.3d 730, 737-742 (9th Cir.

2009) (holding that claims filed in derogation of the *Barton* Doctrine may be removed to the appointing bankruptcy court under federal bankruptcy law); *Compare In re Trafford Distributing Center, Inc.*, 520 B.R. 147 (Bkrtcy. S.D. Fla. 2014) (*Barton* Doctrine cases are removable under federal bankruptcy law, rejecting the holding in *Harris* that removing the case cures failure to comply with the *Barton* Doctrine);[1]  *In re Coastal Plains, Inc.*, 338 B.R. 703, 710-711 (N.D.

---

[1]      The court in *re Trafford Distributing* explained,

> The removed action ... assert[s] that Michael Bakst and Steven Fender conspired to influence and corrupt the judiciary in the performance of duties to obtain a favorable ruling for Mr. Bakst's client, Soneet Kapila, thereby causing injury to the Defendants [in the Related Adversary Proceedings]. The allegations in the removed action refer to acts taken by Mr. Bakst while he was attorney for the Trustee, representing the Trustee in the Trustee's efforts to recover, administer, and protect estate assets. Accordingly, the allegations raised in the removed action clearly "arise in" and "relate to" this bankruptcy case, and are within the exclusive jurisdiction of this Court.

In support of this holding, the *Trafford Distributing* court cited the decision *In re Summit Metals, Inc.,* 477 B.R. 484, 497–98 (Bankr. D. Del. 2012), which held:

> Courts in other jurisdictions have held that leave of the appointing court cannot be rectified after the suit has been filed, because the case is void *ab initio*. *See, e.g., In re Kids Creek Partners, L.P.,* 248 B.R. 554, 558–59 (Bankr.N.D.Ill.2000), *aff'd*, N. 00 C 4076, 94 B 23947, 2000 WL 1761020 (N.D.Ill. Nov. 20, 2000) (the appointing court dismissed the case under the *Barton* doctrine when plaintiffs requested leave to sue the Trustee only after filing suit in non-appointing court); *Heavrin v. Schilling* (*In re Triple S Rests., Inc.),* 342 B.R. 508, 512 (Bankr.W.D.Ky.2006), *aff'd*, 519 F.3d 575 (6th Cir.2008) (the appointing court dismissed the case under the *Barton* doctrine because the plaintiff did not seek or obtain leave of that court before filing suit against the Trustee in state court); *In re Coastal Plains, Inc.*, 326 B.R. 102 (Bankr.N.D.Tex.2005).

Tex. 2006) (*citing* 28 U.S.C. § 1452); *Herrera v. Gonzales (In re Herrera)*, 472 B.R. 839, 852–54 (Bankr.N.M.2012) (*Barton* Doctrine cases are removable under federal law, rejecting the holding in *Harris* that removing the case cures failure to comply with the *Barton* Doctrine).[2]

Here, the record establishes the following undisputed facts:

1. On May 27, 2008, the sole director of Mirabilis Ventures, Inc. ("MVI") appointed Cuthill as liquidating president of MVI (Doc. 39-1 at ¶ 3).

2. That day, Cuthill, in his capacity as liquidating president, filed MVI's petition for bankruptcy protection in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division ("MVI Bankruptcy"). *See* In re Mirabilis, Case No. 6:08-bk-04327-KSJ (Bankr. M.D. Fla., May 27, 2008).

3. Twelve days after the filing of the MVI Bankruptcy, the District Court for the Middle District of Florida stayed the case styled *Mirabilis Ventures, Inc., et al. v. Palaxar Group, LLC, et al.*, Case No. 6:07-cv-1788-Orl-28-KRS (M.D. Fla. 2007) (the "[Mirabilis] Litigation") for 18 months until December 2, 2009 (Doc. 1 at ¶¶ 135, 140, 165; Doc. 259 at p. 4).

4. On October 27, 2009, during the stay, the bankruptcy court in

---

The *Coastal Plains* decision was affirmed by the reviewing District Court. *In re Coastal Plains, Inc.*, 338 B.R. at 710-711.

[2]      If diversity jurisdiction is lacking, this case will likely end up back in this Court.  If Plaintiffs were to re-file this case court in Virginia, the Broad Defendants would either remove the case under federal question jurisdiction based on the authority cited above, or move for an injunction against the suit in the bankruptcy court in this District.  *In re W.B. Care Center, LLC*, 497 B.R. 604 (Bkrtcy.S.D.Fla., 2013) (enjoining state court proceedings in violation of the *Barton* Doctrine even after the estate was closed).  If the Broad Defendants remove the case to the federal court in Virginia, the federal court in Virginia would likely again transfer venue to Florida (Doc. 149).  If the Broad Defendants move for injunctive relief, the bankruptcy court in this District would enter an order which would be reviewed by a judge in this District.  If Plaintiffs seek bankruptcy court permission to proceed, the merits addressed by the Court would be addressed in this District. Ultimately, this Court would be called on to rule on the same questions it has already addressed.  Therefore, from a practical perspective, the Court should address its federal question jurisdiction now.

the MVI Bankruptcy entered an order confirming the modified joint amended plan of liquidation. The confirmation order stated in pertinent part:

> CC. The Debtors have disclosed the identities, affiliations and compensation of the individuals who will serve as officers and/or directors of the Liquidating Debtor. Cuthill will act as initial President and the initial Director of the Liquidating Debtor. The appointment, or continuation in office, of such individual is consistent with the interests of creditors and with public policy.
> . . .
> 13. The President of the Liquidating Debtor [Cuthill], is hereby appointed as the representative of the Estate pursuant to 11 U.S.C. § 1123(b)(3)(B) for the purpose of retaining and enforcing the Causes of Action.

> 14. Upon the Effective Date, the President [Cuthill], on behalf of the Liquidating Debtor, shall have the right, and be vested with authority, to seek adjudication of the Causes of Action. Such rights shall be transferred to the Liquidating Debtor for the benefit of Class 2 Creditors as of the Effective Date, and the President [Cuthill], as representative of the estate, and subject to the relevant provisions and limitations set forth in the Plan, shall have the right and be fully vested with the authority to assert and prosecute such Causes of Action, and to prosecute, settle or compromise any such Causes of Action, for the benefit of Class 2 Creditors.

(Doc. 39-2 at 9-14, ¶¶ CC, 13, and 14; Doc. 259 at p. 8)

> 5. The bankruptcy court's order confirming the Joint Amended Plan of Liquidation as Modified stated that Mirabilis, the liquidating debtor, was 'designated as the representative of the Bankruptcy Estates for the retention and enforcement of any Claim or Interest' belonging to the Debtors or the Bankruptcy Estates." (Doc. 39-2 at 8; see also Doc. 76-2 at 2 (defining Mirabilis to be the liquidating debtor))." (See Doc. 259 at p. 9).

> 6. Broad and Cassel appeared as post-confirmation litigation counsel for the liquidating debtor, Mirabilis, on October 30, 2009 in the bankruptcy court; this notice was signed by Kobert (Doc. 65-1).

11

7.  The Broad Defendants, as post-conformation counsel for the liquidating debtor, prosecuted the causes of action against Plaintiffs for the benefit of the creditors of the bankruptcy estate (Doc. 39-2 at 9-14, ¶¶ CC, 13, and 14).

8.  In the Mirabilis Litigation, Vilmos, Kobert, and Norman represented Mirabilis beginning in 2009.  In addition, Broad and Cassel appeared for Nexia Strategy through Vilmos and Norman (Notice of Appearance, Doc. 24-10).

9.  The MVI Bankruptcy proceeded in the Middle District of Florida (Doc. 65-1).

10. The MVI Bankruptcy closed after entry of the Amended Order, on December 30, 2014 (Doc. 275).

Plaintiffs' claims for malicious prosecution and other tort claims are inextricably tied to questions concerning the Broad Defendants' actions as post-confirmation counsel for the liquidating debtor.  Thus, the Broad Defendants' prosecution of the Mirabilis Litigation for the benefit of the creditors arises under the bankruptcy laws and would not have existed independent of these laws.   For these reasons, this case is a "core" proceeding under 28 U.S.C. § 157(b), and the Court has subject matter jurisdiction to hear this case.

A suit, such as this case, alleging tortious conduct against the functional equivalent of a bankruptcy trustee and counsel for a liquidating debtor is a "core" proceeding.  In *Hongman, Miller, Schwartz & Cohn v. Weitzman* (*In re DeLorean Motor Co.*), 155 B.R. 521, 525 (9th Cir. BAP 1993), the Ninth Circuit held that a plaintiff's malicious prosecution claim against a Chapter 7 trustee and his counsel was a "core" proceeding and thus found federal jurisdiction which warranted a reversal of the lower court's decision to remand the case back to the state court.  In its reasoning, the court stated:

> The action arises from the efforts of officers of the estate to administer the estate and collect its assets and therefore impacts the handling and administration of the estate. Although the . . . action asserts a state law claim, as the functional equivalent of an action against the trustee, it is inextricably tied to the determination of an administrative claim against the estate and is similarly tied to questions concerning the proper administration of the estate. For these reasons, we determine that [the] action against [defendants] is within the scope of 28 U.S.C. § 1334(b) and a core proceeding within the scope of 28 U.S.C. § 157(b).

*Id.  See also In re Heinsohn*, 247 B.R. at 243 (plaintiff's malicious prosecution claim against a former trustee was a "core" proceeding and thus trustee had federal jurisdiction to remove the case to federal court).

In *In re Lowenbraun*, 453 F.3d 314, 321 (6th Cir. 2006), the plaintiff sued counsel for the bankruptcy trustee based on a contempt proceeding that counsel brought against the plaintiff in the bankruptcy action. The plaintiff asserted claims for libel, slander, abuse of process, wrongful use of civil proceedings and the tort of outrage (a species of intentional infliction of emotional distress). The Sixth Circuit held that the lawsuit was a core proceeding within the "arising in" category of § 1334(b):

> Canary's status as counsel to the trustee, rather than as a trustee himself, does not alter our analysis.  This court held in *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1241 (6th Cir. 1993), that so long as "they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets," counsel and other court-appointed officers who represent the estate "are the functional equivalent of [the] trustee."  Because Ethel's claims would not exist but for the bankruptcy proceeding, and because Canary filed the Contempt Motion to assist in the administration of the estate, Ethel's state law action was a core proceeding . . . .

Finally, the Seventh Circuit reached the same conclusion in *In re Repository Techs., Inc.,*

601 F.3d 710, 721-22 (7th Cir. 2010).  The plaintiff in *In re Repository Techs* filed a lawsuit

against lawyers representing the debtor in its bankruptcy.  Like the Palaxar Plaintiffs in this case,

the plaintiff in *In re Repository Techs* asserted claims for conspiracy and tortious interference

based on allegations that the lawyers had abused the bankruptcy process, including knowingly

filing the bankruptcy for improper purposes.  See *id.* at 719-720.  The Seventh Circuit concluded

that the lawsuit was a core proceeding because the claims fell within the "arising in" category of

§ 1334(b) jurisdiction:

> These allegations make clear that Nelson's claims arise out of the
> defendants' conduct in RTI's bankruptcy case.  Because such
> claims could not "have been the subject of a lawsuit absent the
> filing of a bankruptcy case," 1 Collier P 3.01[4][c][iv] at 3-27, the
> district court correctly recognized its "arising in" jurisdiction . . . .
>
> * * * *
>
> And as our review of Nelson's complaint makes clear, the
> defendants' pre-petition conduct is "inextricably bound to the
> bankruptcy proceeding" and Nelson's claim of abuse of the
> bankruptcy process. Because Nelson's lawsuit is based on the
> defendants' role as bankruptcy counsel, recognizing these lawyers'
> right to remove the case to federal court is consistent with
> Congress's broad grant of federal jurisdiction over bankruptcy
> matters.

While the Eleventh Circuit has not addressed this question, it has adopted a test for the

"arising in" category which is consistent with the test used by the Ninth Circuit, the Seventh

Circuit and the Sixth Circuit:

> The "arising in a case under" category is generally thought to
> involve administrative-type matters, 1 Collier on Bankruptcy P
> 3.01[4][c][iv], or as the Wood court put it, "matters that could arise
> only in bankruptcy."

*In re Toledo*, 170 F.3d at 1345 (quoting In re Wood, 825 F.2d 90, 97 (5th Cir.1987)).

14

Consistent with this Court's law on the "arising in" category, and consistent with holdings by the Ninth Circuit, the Sixth Circuit and the Seventh Circuit, Plaintiffs' claims constitute a core proceeding "arising in" title 11. Therefore, this Court had subject matter jurisdiction in this case to decide the *Barton* Doctrine questions presented and to determine that but for the *Barton* Doctrine, the Court would have dismissed Plaintiffs' claims against the Broad Defendants for failure to state a claim upon which relief can be granted.

## III.   THIS COURT HAS SUBJECT MATTER JURISDICTION TO DECIDE THIS CASE UNDER THE FEDERAL QUESTION DOCTRINE BECAUSE THIS IS A "RELATED" PROCEEDING UNDER THE FEDERAL BANKRUPTCY LAWS

Not only does the Court have subject matter jurisdiction over this appeal because this case is a "core" proceeding, but it also has federal jurisdiction because this case is "related to" a bankruptcy proceeding. 28 U.S.C. § 1334 confers upon a district court "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). In *Lemco Gypsum, Inc. v. Kemira, Inc.,* 910 F.2d 784, 788 (11th Cir. 1990), this Court "join[ed] the majority of circuits that have adopted the *Pacor* formulation" for determining whether a civil action is related to a bankruptcy case.

> [The test is] whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id*.

This case is "related to" the MVI Bankruptcy because Plaintiffs seek re-examination of

orders in the MVI Bankruptcy.  *See In re Lunan*, 489 B.R. at 722 (finding federal court jurisdiction under 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2) where claims involved actions by the trustee and orders of the bankruptcy court).  For example, Plaintiffs' allege that Cuthill's pre-bankruptcy appointment as liquidating president was made without proper authority (Doc. 1 at ¶ 25), that Cuthill's filing of Mirabilis' bankruptcy petition was a bad-faith bankruptcy filing, (Doc. 1 at ¶ 97), and they accuse the Broad Defendants of participating in that conduct.  The District Court Judge who reviewed the bankruptcy judge's order addressed this issue ruled, "Moecker's appointment of Cuthill [was] legal, and, therefore, Cuthill's decision to have Mirabilis file for bankruptcy protection was not an ultra vires act."  (Doc. No. 81-8, Middle District of Florida Bankruptcy Docket 576 at p. 6); *In re Mirabilis Ventures, Inc*., No. 6:09–cv–1658, 2010 WL 1644915, *3 (M.D. Fla. Apr. 21 2010).

By way of another example, the District Court who reviewed the bankruptcy judge's order concerning whether the bankruptcy was filed in bad faith, ruled:

> On August 26, 2009, the Bankruptcy Court denied those motions, concluding among other things that the Chapter 11 petitions had not been filed in bad faith, that the debtors possessed the corporate authority to file the chapter 11 petitions, and that the Forge group had not shown that Mirabilis was merely a sham corporation that should not be permitted to file for bankruptcy relief. . . The Court finds that Judge Jennemann did not commit legal error or abuse her discretion in concluding that the creditors had not established cause for dismissal or conversion.

*In re Mirabilis Ventures, Inc.,* 2010 WL 1644915, at *1, 6-7.

By way of another example, the Bankruptcy Court addressed the issue raised by the Plaintiffs in this case insofar as it required the continued participation of the Balch Defendants as counsel for Nexia in the Mirabilis Litigation; they were not permitted to withdraw by the District

Court until the bankruptcy court determined that Nexia's claim belonged to the debtor. (Doc 24-9; 24-10);   *In re Mirabilis Ventures, Inc., No.*, 6:08–bk–04327, 2010 WL 2293068, *4 (Bkrtcy. M.D. Fla. June 02, 2010).   Plaintiffs again challenge rulings by the Bankruptcy Court and District Court.

By way of still another example, the District Court in the Mirabilis Litigation cited its sister Court's ruling addressing the issue raised by Plaintiffs in this case concerning the Broad Defendants' authority to represent Nexia.   The Court ruled, as follows:

> All parties in this case were aware of the Bankruptcy Court's order, the Government's appeal, and Mirabilis's position that it controlled Nexia's claims in this case. It is now unassailable that Mirabilis controlled Nexia's claims at the time of mediation. *See In re Mirabilis Ventures, Inc.,* Case No. 6:10–cv–1189–GAP, Doc No. No. 7 (M.D.Fla. Aug. 25, 2010). There is nothing inconsistent or amounting to bad faith in Mirabilis attending the mediation on behalf of Nexia, asserting its right to control Nexia's claims based upon Bankruptcy Court's ruling, acknowledging the right to control those claims remains open because of the pending appeal, and requesting a stay of the case until the resolution of that appeal. . . Although the Palaxar Defendants were aware of the Bankruptcy Court's ruling that Nexia's claims were the property of Mirabilis and of the Government's appeal, the Palaxar Defendants did not move to postpone the mediation and actively participated in the mediation at which Broad and Cassel and Cuthill represented Nexia's interests.

(Doc. No. 81-9); *Mirabilis Ventures, Inc. v. Palaxar Group, LLC,* 2010 WL 5582880, *4-5 (M.D. Fla. Dec. 20, 2010) (*affirmed* 2011 WL 127167 (M.D. Fla. Jan. 14, 2011)).

Plaintiffs' prosecution of this case had an effect on the estate being administered in bankruptcy. The record establishes that during the pendency of this case, Plaintiffs served Cuthill with a preservation letter demanding that he preserve, maintain and not destroy any MVI documents and records concerning the MVI Bankruptcy (Doc. 269-3 at 2-3).   During the

pendency of the MVI Bankruptcy, approximately 4,000 boxes of MVI records were being maintained at Iron Mountain.

As a result of the filing of this case, Cuthill continued to pay Iron Mountain an administrative expense of $2,874.84 per month during the pendency of this case and Cuthill was unable to make prompt final distributions of funds available in the estate.  (Doc. 269-3 at 10). Cuthill was also recently required to file a motion in the MVI Bankruptcy to authorize him to destroy the MVI records (Doc. 269-3 at 6 and 9).  It is undisputed that Plaintiffs' filing of this case has negatively affected Cuthill's ability to administer the bankruptcy estate and delayed Cuthill's ability to make a final distribution of funds available in the estate (Doc. 269-3 at 9-10). Plaintiffs' filing of this case also decreased the monetary amount of the final distributions that Cuthill made in the MVI Bankruptcy as a result of Cuthill's need to continue paying the administrative expense of $2,874.84 per month to preserve the MVI records that are being stored with Iron Mountain.

The record is clear that this case is "related to" the MVI Bankruptcy.  The outcome of this case could alter (and indeed has altered) Mirabilis' rights, liabilities, options or freedoms of action and which in any way impacts upon the handling and administration of the bankrupt estate. Accordingly, this Court has subject matter jurisdiction to decide this appeal.

IV.    **AN ARTICLE III JUDGE HAS THE AUTHORITY TO DECIDE THE FEDERAL QUESTIONS WITHOUT THE BANKRUPTCY COURT FIRST RULING ON THOSE ISSUES, BECAUSE BANKRUPTCY JUDGES DERIVE THEIR AUTHORITY FROM APPOINTMENTS BY ARTICLE III JUDGES IN THEIR DISTRICT**

Under Article III of the Constitution, the Court  had the authority to hold that "[i]f the Court had found that it had subject matter jurisdiction over the claims against [Cuthill and the

Broad Defendants], the 12(b)(6) arguments in Cuthill's [and the Broad Defendants'] motion[s] would have been granted for the reasons stated in this Order in the discussion of the 12(b)(6) arguments of the other Defendants," without first referring the case to the bankruptcy court in this District.   A Federal District Court Judge sitting in the District where the bankruptcy proceeded has the authority to hear "core proceedings" or bankruptcy "related" proceedings pursuant to Article III of the United States Constitution.   "[O]ur Constitution unambiguously enunciates a fundamental principle—that the 'judicial Power of the United States' must be reposed in an independent Judiciary. It commands that the independence of the Judiciary be jealously guarded, and it provides clear institutional protections for that independence." *Northern Pipeline Constr. Co.,* 458 US at 60, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982); *Id.* at 87 ("We conclude that 28 U. S. C. § 1471 (1976 ed., Supp. IV), as added by § 241(a) of the Bankruptcy Act of 1978, has impermissibly removed most, if not all, of 'the essential attributes of the judicial power' from the Article III district court, and has vested those attributes in a non-Art. III adjunct").

Bankruptcy judges derive their authority from referrals of bankruptcy matters by the District Courts, who sit in review of bankruptcy court orders.   28 U.S.C. § 157(a) provides that "[b]ankruptcy courts have jurisdiction to hear 'any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11, 'upon referral by a district court.'"   *Lawrence v. Goldberg*, 573 F.3d 1265, 1270 (11th Cir. 2009) (*citing and quoting* 28 U.S.C. § 157(a) (2006)).   It therefore follows that an Article III Judge in the same district where the bankruptcy proceeded has the constitutional authority to rule on "core" or "related" bankruptcy questions without first referring them to the bankruptcy court.   11 U.S.C. §

105(a) "'enable[s] the court to do whatever is necessary to aid its jurisdiction, i.e., anything arising in or relating to a bankruptcy case.'"  *See Allard v. Weitzman*, *In re DeLorean Motor Co.*, 991 F.2d 1236, 1243 (6th Cir. 1993) (quoting (2 COLLIER ON BANKRUPTCY ¶ 105.02 at 105-03 (15th ed. 1987)); *In re Crown Vantage, Inc.,* 421 F.3d, 963, 973 (9th Cir. 2005) ("The bankruptcy court retained jurisdiction over the case.  In this context, the Liquidating Trustee is the 'functional equivalent' of the bankruptcy trustee and is entitled to *Barton* protection"); *Matter of L & S Industries, Inc.*, 989 F.2d 929, 932 (7th Cir. 1993).

It would have been unseemly and improper for the Broad Defendants to have moved a bankruptcy judge appointed by the judges in this District to enjoin a superior Article III court from proceeding in this case.  *In re CDP Corp., Inc*. 462 B.R. 615, 628 (Bkrtcy. S.D. Miss. 2011).  Thus, a motion to dismiss for lack of subject matter jurisdiction for violation of the *Barton* Doctrine is a proper procedure for adjudicating *Barton* Doctrine questions.  *See Carter v. Rodgers,* 220 F.3d 1249, 1252 (11th Cir. 2000); *In re Biebel*, Bankruptcy No. 02–32865, 2009 WL 1451637, at * 6 (Bkrtcy. D. Conn. May 20, 2009).

For the foregoing reasons, the District Court had federal question jurisdiction to rule on the *Barton* Doctrine issue and to hold alternatively that the Court would have dismissed Plaintiffs' claim on the merits.

Respectfully submitted,

/s/ *Loren H. Cohen*
Loren H. Cohen
Florida Bar No. 303879
lcohen@mitrani.com
MITRANI, RYNOR,
  ADAMSKY & TOLAND, P.A.
301 Arthur Godfrey Road, Penthouse
Miami Beach, FL 33140
Tel.:   305/358-0050
Fax:   305/358-0550
Attorneys for:
Broad and Cassel
Nicolette Vilmos
Roy Kobert
Todd Norman

## CERTIFICATE OF SERVICE

On September 10, 2015 a copy of the foregoing pleading was served using the Court's CM/ECF system, with electronic notification of such filing to the following counsel of record:

## SERVICE LIST

Darren Marshall Hart, Esq.
Hart & Assoc., P.C.
9025 Forest Hill Avenue, 1st Floor
North Chesterfield, VA 23235
info@richmond-law.com
**Counsel for Plaintiff Palaxar**

Jonathan Dennis Kaney, III, Esq.
Kaney & Olivari, PL
55 Seton Trail
Ormond Beach, FL 32176
jake@kaneyolivari.com
**Counsel for Plaintiff Palaxar**

Richard John Knapp, Esq.
Richard J. Knapp, PC

2800 Patterson Avenue, Suite 101
Richmond, VA 23221
richard@rknappesq.com
**Counsel for Plaintiff Palaxar**

Christina Bredahl, Esq.
Cole, Scott & Kissane, PA
Suite 750
1900 Summit Tower Boulevard
Orlando, FL 32810
Tel.:    321/972-0025
Fax:    321/972-0099
christie.bredahl@csklegal.com

Stephen G. Charpentier, Esq.
2285 W. Eau Gallie Boulevard
Melbourne, FL 32935
steve@brevardlawyer.com
**Counsel for Maher Law Firm, P.A.,**
**Michael C. Maher, Scott Mokwa and Aaron Carter Bates**

Min K. Cho, Esq.
William B. Wilson, Esq.
Holland & Knight LLP
200 S. Orange Avenue, Suite 2600
Orlando, FL  32801
min.cho@hklaw.com
bill.wilson@hklaw.com
**Counsel for Appellee Robert W. Cuthill, Jr.**

Scott A. Cole, Esq.
Kathryn L. Smith, Esq.
Cole, Scott & Kissane, P.A.
Dadeland Centre II, Suite 1400
9150 South Dadeland Boulevard
Miami, FL 33156
scott.cole@csklegal.com
mary.rigau@csklegal.com
katie.smith@csklegal.com
**Counsel for Appellee, Robert O'Malley**

Mark J. Criser, Esq.
Landis V. Curry III, Esq.

Dennis P. Waggoner, Esq.
Hill Ward Henderson, P.A.
101 E. Kennedy Boulevard - Suite 3700
P.O. Box 2231
Tampa, FL 33602-5195
Tel.:    813/221-3900
Fax:    813/221-2900
mark.criser@hwhlaw.com
lance.curry@hwhlaw.com
dennis.waggoner@hwhlaw.com
**Counsel for Appellees Scott Shuker, Elizabeth**
**Green and Latham, Shuker, Eden & Beaudine, LLP**

Laurie Webb Daniel, Esq.
Holland & Knight LLP
1201 W. Peachtree Street, Suite 2000
Atlanta, GA  30309
laurie.daniel@hklaw.com
**Counsel for Appellee Robert W. Cuthill, Jr.**

Matthew P. Farmer, Esq.
Farmer & Fitzgerald, P.A.
102 W. Whiting Street, Suite 501
Tampa, FL 33602
Tel.:    813-228-0095
mattfarmer1@aol.com
**Counsel for The Maher Law Firm, P.A.; Matthew S. Mokwa; and Aaron C. Bates**

Scott Marshall Goldberg, Esq.
Hetz, Jones & Goldberg, LLC
6052 Turkey Lake Road, Suite 100
Orlando, FL 32819
Tel.:    407/210-6588
Fax:    866/781-4433
Email: sgoldberglaw@gmail.com
Attorney for Defendant Scott Marshall Goldberg

Geremy Walden Gregory, Esq.
Balch & Bingham, LLP

841 Prudential Drive, Suite 1400
Jacksonville, FL 32207
Tel.:   904/393-9000
Fax:    866/230-9973
Email: ggregory@balch.com

David Brendan Lacy, Esq.
Christian Barton, LLP
909 E. Main Street, Suite 1200
Richmond, VA 23219-3095
Tel.:   804/697-4121
Fax:    804/697-6121
Email: dlacy@cblaw.com

Shannon Alexis Ligon, Esq.
126 E. Jefferson Street
Orlando, FL 32801
shannon@ligonlawgroup.com
**Counsel for Appellees Shame Williams and Jodi Donaldson Jaiman**

Patrick Ryan Ruttinger, Esq.
Cole, Scott & Kissane, P.A.
Suite 750
1900 Summit Tower Boulevard
Orlando, FL 32810
Tel.:   321/972-0013
Fax:    321/972-0099
Email: patrick.ruttinger@csklegal.com
Attorneys for Robert O'Malley

Kenton Voges Sands, Esq.
Sands White & Sands, P.A.
760 White Street
Daytona Beach, FL 32114
kent@sandswhitesands.com
**Counsel for Appellee Harrison T. Slaughter, Jr.**

Michael W. Smith, pro hac vice
msmith@cblaw.com

24

David Lacy
dlacy@cblaw.com
Clint Andrew Nichols
cnichols@cblaw.com
Christian & Barton, L.L.P.
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Tel.:    804/697-4100
Fax:    804/697-4112
Counsel for the Balch Appellees
Attorneys for Defendants Allen McLean Estes, John Russel Campbell, Eric Langley, Lindsay
Reese, Balch & Bingham LLP

Dennis Joseph Whelan, III, Esq.
Dennis J. Whelan, PC
2222 Monument Avenue
Richmond, VA 23220
Tel.:    804/359-4123
Fax:    804/359-4124
Email: djw@djwlegal.com
Attorneys for Defendants, Michael C. Mahler, Matthew Scott Mokwa, Aaron Carter Bates, The
Maher Law Firm, P.A.


In addition, on September 10, 2015 copies of the foregoing will be sent via U.S. Mail, postage
prepaid, to the following non-ECF Parties:

Frank L. Amodeo
48883-019
FCC Coleman – Low
Unit B-3
P.O. Box 1031
Coleman, FL 33521-1031
PRO SE

United States of America
US Attorney's Office
18th Floor
600 E. Main Street
Richmond, VA